Court of Appeals for the Third Circuit. We're glad you're with us today. Our first case is Melissits v. Superintendent No. 24-1839. Judge Roth, can you hear us? I can hear you and I'm getting the volume turned up. Okay, will do. Tell us when we're good to go. I thought you might have a question even before we called the case. That would be a record I think. Are we good? We're working on it. Okay. We're on the clock, so we're okay. No one's saying anything. Can you hear us now? Can you hear us? Can you hear us? No, I hear you. We haven't talked too much. I mean, forget my hearing aids. Unless we have a lip-reading ability. I know I don't. Can you hear now? I can hear now, yeah. Okay, that's good. We're good? Okay. We'll hear from counsel for the appellant. May it please the court, counsel, I'm Damien Shore on behalf of Matthew Melissits. I'd like to reserve two minutes for a rebuttal. That'll be granted. Thank you. You were good enough to give us last week a letter telling us what three points you wanted to address. You can address others, but we would like it if you could address those. I'm sure you'll get to them. I believe the first issue that you identified is dispositive of the other two. And as far as whether or not the issue that's before this court, it was not adjudicated on the merits by the state court. The issue is, did attorney Philip DeLucente tell Matthew Melissits before he pled guilty about a possible defense to shaken baby syndrome? Melissits says no. And there's never been anything to rebut that. The court, the cases that govern this area seem to hold that for a case to have been adjudicated on the merits in the state court, it has to have been based on the substance of the claim. It's not rejected on procedural grounds or other grounds. It has to have a res judicata effect so the issue is completely resolved. And it must have been put in issue and directly determined. Now, before we go too far, I get what you're saying, but there was in the plea, he said we discussed all defenses. And surely we can't have a duty on defense counsel to lay out every defense discussed with counsel. I mean, that just wouldn't be right. How do we know whether this was discussed or not? You don't. That's why we have to have a hearing. Okay. And not only that, because there was no hearing at the state court on this issue, it's something where I believe in Lesko v. Lehman, you've said that this court has said that you have to have a hearing. Well, let me back up again to the concept, the first question we have. Isn't there a rebuttable presumption that the case was decided on the merits? So you need to find a way around that. Well, if you have a hearing, but you don't have anything on the merits here. You have nothing. Well, obviously the court believed that because counsel had the report at the time of the plea colloquy that surely it was shared with the defendant. That was never established. But that was the inference that the court drew. So isn't that a decision on the merits? No, because there's no evidentiary hearing. Well, we know there's no evidentiary hearing, but the question is whether he's entitled to one now. And you need to rebut the presumption that this really was a merits-based ruling, do you not? I don't see this as a merits-based ruling because the court never said that in its rejection of his claim. What the court said was, well, he pled guilty, so he's waived all defenses. They're moot. And he was told what the possible sentences could be, and he understands he's given up his right to be having a trial. They never really addressed, was he informed of this? Did the court misapprehend his argument, do you think? That's a good question. He made it clear, though, I mean, this letter, we're really talking about a letter from a Dr. Smith, and that came along kind of late in the game as far as his state court litigation. He filed a pro se PCRA. They had a hearing scheduled. He shows up and says, I want to fire my lawyer. Say, okay, hearing's canceled. Mr. DeLucente, go home. Okay? And Attorney Dawson represented him at the end. Okay. Yeah, there's somebody in between. All right. Next attorney was Attorney Smarto. She was told to file something in 45 days. 90 days later, Mr. Millicent files another petition. The courts now rejected that and said, Smarto, talk to this guy, see what his beef is. Smarto files a no-merit letter. Again, not addressing this issue. I don't know if she didn't know about it or what, but then the court had then issued its opinion saying, I'm going to dismiss this, and then he filed something new with the Dr. Smith letter, and that's when Dawson comes in at that point, and Dawson doesn't really say much except, I think he said, I examined the doctor or the letter, but he didn't sign it or he didn't want to sign it, but that was in 2018. We're talking about September of 2014. That is the time in question here. That is when he pled, Mr. Millicent's pled guilty, and we have to know then what was he told by Phil DeLucente, and you need to have a hearing, an evidentiary hearing to do that. Was it clear at that time that the expert wasn't going to sign the report, wouldn't testify? That occurred later? That nobody heard of this myth until later in the game, and Dawson's the one who said he won't sign the report or he wouldn't sign it. I don't know if he didn't say, I called him. We know counsel had the report prior to the guilty plea. It appears so, because I have it in the appendix. Millicent's made repeated efforts to get his file from his first PCRA attorney, and finally he says, I got it. You know, it's gonna take me a while to get a copy. Smarto said, I got the entire file, but she says nothing. I don't know what she looked at it. Maybe under state law they said this has no merit, but we're talking about a federal constitutional right here, and so we just don't know. Your friend across the aisle expends some ink on the fact that at the PCRA hearing, Dawson said, hey, Dr. Smith's not available. Doesn't that, and he says that's dispositive, essentially. Doesn't that dispose of it? I mean, it was maybe a defense if you had a cooperative doctor, which you didn't, maybe. You know, how do you respond to the other side's argument? Well, first, as I said, that was in 2018, and we don't know. He just says he wouldn't sign the report. He didn't say he's not available. We don't know why didn't he sign it. Maybe he didn't get paid. Maybe he's senile at that point. Who knows? We don't know, but the question is, did attorney De Lucente tell Matthew Millicent sometime between March of 2014, when that letter was written, and September of 2014, when Mr. Millicent's pled guilty, that, hey, here's a possible defense, and the problem is, is, I mean, in another context, I mean, in McCoy v. Louisiana, the Supreme Court made it clear what four decisions belong to the defendant. Number one is, do I plead guilty, or do I go to trial, and the courts have also held, like in Hill v. Lockhart, and I think Padilla, you've got to give the guy good advice when it comes to making his decision about whether or not to plead guilty or go to trial. He has to understand the ramifications, and Millicent has been saying all along, he's been begging for a hearing in the state court, in the federal courts. I wasn't told about this. I would not have pled guilty. Please give me a hearing, and that's all he's really asking to do here, is send it back to the district court and let him have his evidentiary hearing. In that regard, I mean, if the court, if the state court didn't do with Pickering, what do we do with the applicability, I mean, Pinholster, sorry, what we do with the applicability of Fuchs? Do you think Fuchs is on point? You're saying that Pinholster doesn't apply because it wasn't decided on the merits. Right. What if we were to decide it is? Does Fuchs help you? Well, I don't agree with you that it was decided on the merits. Okay, I'm saying, just play devil's advocate. Let's say that we agree. Let's say we think it was decided on the merits. Well, if that's the case, then he's out of luck. He never gets the hearing that he's been trying to have. This issue never gets resolved, and he's given up his rights without having been told. But you're saying that Fuchs really doesn't help you? No, Fuchs helps me. Okay. Because Pinholster is distinguishable because Pinholster had two evidentiary hearings in state court. He had a state court, third version of PCRA. He lost. He went through the, he went into the federal system, and they said, oh, look, let's send this back and argue another point. He had a second hearing. Now, Fuchs never had a hearing. And as the line in Fuchs, I don't know who wrote the opinion, I can't recall now. Judge Bevis, as I remember. This is his first bite at the apple. Okay. Pinholster had two bites at his apple. Okay. But Middlesex never got his first bite at the apple. Then, arguably, it could be decided on the merits. But this was not decided on the merits because nowhere in the district, the state court, the PCRA opinion, nowhere in the state superior court do they say, this issue, this is our decision on this issue. They just say, well, he was told, he knew what he was giving up, and it's a moot point. Well, in footnote five of the superior court opinion would seem to say they were misapprehending the argument he was making. Let's take another look at that. What page is that in the? That's, the appendix is 441. It talks about the plea colloquy and the fact that didn't investigate. I mean, I think that supports, supports your argument. Okay, then I don't think I need to say anymore that we're in agreement. Yeah, throwing you a softball there. You can rebut it if you want. Oh, no, no, no. But really, what you're being asked to do here is nothing different than what you did in Fuchs, which is send this back and finally get this issue put to bed, one way or another. I'm going to go back to where I started. The PCRA courts, and I think your rely pretty heavily on your client's attestation in the guilty plea that he was advised of all possible defenses. Does that statement undermine your claim? No, because he said, he's saying, I was not told of this defense. I mean, he's not a legally sophisticated man. You know, he's relying on his lawyer to give him good advice. It's ineffective when you don't give good advice, and it's prejudicial because he's saying, if I'd known about this, I would never have pled guilty. I'd have gone to trial. I'm close to two minutes here, so. The two minutes are yours. Judge Roth, do you have any questions you'd like to pose? I have no questions, thank you. Okay, well, then what I'm going to ask is that you simply vacate the district court, send it back for an evidentiary hearing, and then we'll see where it goes from there. Thank you. Thank you, counsel. We'll hear from your adversary.  May it please the court, Jeremy Maines from the Commonwealth out of Westmoreland County. Good afternoon. Good afternoon. As I sat there and listened, there was a couple of things that I would like to address before proceeding through the questions that I also appreciate the guidance the court has gave as far as the analysis and oral argument for today. Counsel has mentioned that there was nothing to rebut that Attorney DeLacente did not tell the defendant about the Smith letter, but I cannot get over when, and I should clarify for the court, the hearing that we have testimony from or statements from Attorney Dawson or from a Grazer hearing. There was not a PCRA hearing, it was a Grazer hearing. That's true. However, Mr. Millicent is present for that. There's no indication that he couldn't hear what Mr. Dawson was saying, and he's kind of silent when Mr. Dawson discloses this doctor refused to sign the report. And so the implication, I believe, is rather clear. Someone who is refusing to sign the report... When was this hearing, 2018? Yes, your honor, I believe that's accurate. It was a change of counsel. So what does that have to do with what he knew in 2014? Well, if the doctor is not going to sign the report, the implication of that, I believe, is that he is not available for trial. Attorney Dawson didn't say something that, oh, we were short of funds, or funds weren't available, or he's not available, or I need a continuance to make him available. Attorney Dawson... But what does that have to do with the fact that at the time Mr. Millicent is taking his plea, he says he knew of all possible defenses, and at that moment, his lawyer had in his file an expert report prepared by Smith and an article that would say, you know what, not all shaking is the same, and that that was not given to Mr. Millicent. What is the later, whether he's available, and I have to do with whether counsel at that time should have said to Millicent, you know, got a possibility here, and even if it's not Smith, you know, who knows whether he's some quack, who knows, but look, there's this article that supports it, and we may be able to get some testimony from some people that, you know, not all of this is shaken baby syndrome. I would say if you don't have the doctor authoring the report, he's not available to you, so what is there to disclose? What does that have to do, what does the 2018 have to do with the existence of a file back in 2014? Well, the letter, okay, so the letter is dated 14, so if attorney Dawson is saying that he's not available, the same would be true in 2014 when the doctor, you know, supposedly... Well, he's not available, but he's still making an opinion that would be real, if I'd really like to know about, if I'm Millicent's, and an article, so if not Smith, then somebody else gets somebody to say, to poke holes in this. There's apparently a basis for it. What I would say is, if attorney Villacente was not able to make Dr. Smith available at trial, which I believe is then confirmed at the Grazer hearing by the doctor refusing to offer the report, that defense or that evidence wasn't available to him. So it seems to me, relying on a piece of paper unsigned that says 2014 and a lawyer's comment. Now, the lawyer's comment in the hearing, it's unsworn, it's in a slightly different context. It's about whether who's going to be his lawyer. I mean, is this the kind of thing we can all rely on, put it all together and say this knowingly waived all defenses? I would say he's an officer of the court, and he does acknowledge that that would be, he as in attorney Dawson, acknowledges that Dr. Smith was an important witness. He might have been, but as Judge Rendell points out, who knows when this, I mean, maybe it was after the fact. We don't know. It's very thin. Isn't that what a hearing's for, to flesh this all out and figure out who knew what, when? I think by inference of the doctor not being available by the time of the Grazer hearing, you can also conclude that person was not available at trial. If he had a signed letter... Well, that would be interesting if we had from the PCRA court or the Superior Court this determination that, okay, this was not really important because this wasn't available. We don't have that. We have the PCRA court and the Superior Court totally misconstruing his argument, don't we? How is it that this determination came on the merits in the PCRA court? How did they decide this case on the merits, i.e. what you're offering, which is, well, it really didn't matter? They don't talk about that, do they? What I would say is about on the merits, as far as the case law that I've reviewed about on the merits, you had brought up earlier, Judge, about a rebuttable presumption, the Williams presumption. So I think that's where we start. There's a rebuttable presumption. And this isn't really a case. And we can depend on the PA Superior Court for its analysis. And when we do that, you can look at that. This court can look at that. And this is not a case where the Superior Court said, this is waived or this is procedurally defaulted. It specifically references that letter. No, but they clearly misapprehended his argument, did they not? Are you meaning that it was an argument over the disclosure rather than? Their argument, what they were thinking was that it was a lack of adequate investigation and that there's no evidence to support that plea counsel didn't investigate. I mean, they weren't really looking at the situation that he's saying, you know, my lawyer never gave me this. They don't address that, do they? I mean, you can tell me where in those opinions they say something along the lines of you say that, oh, well, it really didn't matter because he wasn't going to testify. They never even acknowledged that his argument is, you know, a lawyer had something in his file that was going to be helpful to me and he never told me about it. I would agree that the Superior Court doesn't specifically address what the court has just relayed. I mean, I think that's a fair assessment. My position is that when we view these things in context, and I'll be frank with the court, it's the Grazer hearing that I have a hard time getting over with from attorneys. You're really addressing prejudice then, you know, when you come right down to it. You're really not addressing whether they should have a hearing, are you? That brings me to the court had brought up Fuchs and the Fuchs exception really about. What about Fuchs? Your adversary says that's pretty clear. He deserves a hearing based on Fuchs. Sure, but my interpretation of Fuchs is this. It says where a court assumes the truth of what an appellant says and still thinks that they would lose, then that fits this pinholster exception. I don't read that when I read the Superior Court's opinion. They dealt with Dr. Smith's letter. They didn't say if we assume this is true, he would still lose. So I don't think it quite fits the Fuchs exception. Well, but isn't that what the Superior Court said? Even if we assume it's true that there was a possible defense, he waived them all. He said in the colloquy that he waived them and that's what they decided on. So it seems to me that it's pretty squarely within the Fuchs principle. I think what the Superior Court said is that they reviewed that letter and that there's one specific sentence I'm thinking of. Yeah, maybe you can show me where they say. Well, I think the court had noted it was about really footnote five and I understand the court takes issue with directly addressing the disclosure rather than Mr. Millicent's. And it appears on the record, plea counsel was in fact aware of this defense. So they're not buying into the idea that, you know, he didn't even have it. They're pretty much saying he's going to lose anyway. I just don't, I don't know if I agree with the court that they're saying that he waived. They they're saying that it was meritless and I'm pulling that on A-441 of the appellant's supplement. Because if they conclude that he waives, I don't think they address the substance of it. Well, except he says at the bottom of 440, Millicent is bound by these statements that he made under oath in support of his guilty plea. The record doesn't support his claim that plea counsel didn't inform him. He was promised because he had his plea and he said I waive all the offenses. I apologize, was that a question? No, it was not. Okay. But you're, so with respect to back to Dawson, his, he wasn't under oath. You're saying just because he's an attorney makes a statement that that we should accept it? I would believe so. Okay. How about then, then Pinholster? Does that, how does that work in this case, if at all? I think the first question the court poses to us kind of gets to Pinholster, whether AEDPA deference applies or not, right? Because if it's on the merits, deference applies through the AEDPA. If it's not on the merits, then it's down the road. I think we all agree on that. So where Pinholster kind of assists is, I guess it comes back to our previous conversation of Fuchs on whether or not the court is assuming the allegations, if true, he would still lose. It sounds like we may differ a little bit on what the Pennsylvania Superior Court has said in its opinion. Okay. Do you have anything else to add, counsel? I think we, I think I covered what I wanted to cover, Your Honors. Okay. Judge Roth, do you have anything you'd like to ask? I have nothing further. Thank you. Okay. Great. Thank you, counsel. Thank you. And we'll hear rebuttal. Briefly, Your Honor, the government's argument that the fact that an attorney said in a hearing in 2014 that this doctor is not available or is whatever, is a speculation of what is happening there. And I would suggest to you that it continues to take that approach, heaps error upon error, error upon what the state court did, and an injustice upon an injustice. This man wants a hearing, he's entitled to a hearing, and that's all he's asking you to do. And I learned in this courtroom a long time ago when I have nothing else to say, just shut up and sit down. So thank you. Thank you, counsel. We thank counsel for their excellent arguments today and in their briefs. We'll take the case under advisement. And again, thank you, counsel. Thank you, Your Honor. And counsel for the next case can come up.